# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA RODRIGUEZ MIRANDA, | Case No. 1:20-cv-01250-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

_____/

## I.   INTRODUCTION

Plaintiff Laura Rodriguez Miranda ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

---

[1] On July 9, 2021, Kilolo Kijakazi was named Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/history/commissioners.html. She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 10.)

## II. BACKGROUND

On November 14, 2016, Plaintiff protectively applied for DIB and SSI payments, alleging she became disabled on June 13, 2012, due to back surgery, high blood pressure, depression, low back pain, anxiety, and arthritis. (Administrative Record ("AR") 27, 32, 114–15, 126–27, 141, 155, 170, 182, 321.) Plaintiff was born on August 17, 1964, and was 47 years old on the alleged disability onset date. (AR 36, 114, 126, 140, 154, 327, 346, 358.) Plaintiff has a high school education, can read and write in English, but has limited oral communication skills. (AR 36, 58–59, 72, 124, 136, 151, 165, 322.)

### A. Relevant Evidence of Record[3]

#### 1. Medical Evidence

In August 2014, Plaintiff presented to the emergency department complaining of left-sided numbness and weakness. (AR 462–77.) A history of hypertension and low back pain was noted. (AR 466.) A physical exam indicated Plaintiff was in no distress, had normal tone and power, normal gait, intact joints, and normal range of motion. (AR 474.) An MRI of her head showed "a few small focal areas of white matter T2 signal abnormality present, which are non-specific," but no evidence of acute infarct, intracranial hemorrhage, or mass. (AR 464.)

Plaintiff was transported by ambulance in November 2015 after having taken six Vicodin pills to treat her lower back pain. (AR 619–20.) She was assessed with "10-10 lower back pain," with an intact neuro examination, equal sensation, movement, grips, and push/pull. (AR 620.)

In August 2016, Plaintiff presented for lab results. (AR 645–51.) She reported her symptoms were chronic and mild, and she denied chest pain, edema, and irregular heartbeat. (AR 645, 648.) Later that month, Plaintiff underwent several procedures, including: L3-S1 posterior spinal fusion; L3-4, L4-5, and L5-S1 transforaminal lumbar interbody fusion; L3-4, L4-5 decompressive laminectomy/fasciectomy to decompress neural elements; L5-S1 decompressive laminectomy/facetectomy including resection of synovial cyst; L3-S1 posterior spinal instrumentation; and use of synthetic intervertebral cages for arthrodesis at the L3-4, L4-5, and L5-

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

S1 levels. (AR 751–55.) The postoperative diagnoses were lumbar stenosis, cauda equina impingement, lumbar instability, lumbar spondylolisthesis, foot drop, lumbar radiculopathy with motor deficit, lumbar disk herniations, congenital short pedicle syndrome, lumbar synovial cyst, and failed medical/conservative management. (AR 751.)

A CT of the lumbar spine performed in September 2016 revealed moderate diffuse annular bulge with osteophytes at L1-2 as well as mild widening of the facet joints; mild neural foraminal narrowing bilaterally at L2-3 secondary to annular bulge; prior laminectomy and fusion from L3 to S1; evidence for a bone fragment in the left lateral recess at the L3-4 level; and mild facet widening and mild facet osteoarthritis at L2-3. (AR 915.)

In October 2016, Plaintiff presented for an appointment following her fusion surgery in August 2016. (AR 906–09.) She reported feeling "significantly better" and that her "strength had improved dramatically." (AR 906.) She wore a lumbar brace for her physical examination, which showed 4+/5 weakness in the right tibialis anterior and extensor hallucis longus and increased sensation to light touch over the right anterior shin. (AR 907.) Plaintiff's straight leg raising sign was negative. (AR 907.)

Plaintiff presented for another follow up in December 2016, and reported her leg pain had improved. (AR 1073–74.) She still reported "some discomfort" in her left sacroiliac ("SI") joint, and noted that physical therapy is "helping some." (AR 1073.) On physical examination, Plaintiff walked with good coronal and sagittal balance. (AR 1074.) She was "quite tender to light touch rather diffusely" in her lumbar spine, but more so significantly tender over her right SI joint, left greater trochanter, and iliotibial band. (AR 1074.) Plaintiff's motor strength was 5/5 in the lower extremities and range of motion in the hip was intact, but some pain was reproduced in the left greater trochanter region with external rotation of the hip. (AR 1074.) Her straight leg raising sign was negative. (AR 1074.) She was assessed with sacroiliitis, myofascial pain syndrome, trochanteric bursitis in the hip, and status post lumbar fusion. (AR 1075.) It was noted that Plaintiff would continue with physical therapy, declined an injection, and began a trial of anti-inflammatory medication. (AR 1075.)

In February 2017, Plaintiff underwent a left SI joint injection and a left trochanteric bursa

3

injection for treatment of low back pain, degenerative disc disease, status post lumbar fusion, SI joint dysfunction, and trochanteric bursitis. (AR 933–34.) Later that month, she reported 100% improvement on the left side, with some pain on the right side. (AR 917.) She denied radiating pain. (AR 917.) Plaintiff's physical examination showed limited range of motion in her trunk due to stiffness, but no pain reported. (AR 920.) Sensation in her left lower extremity was diminished diffusely below the knee and foot, and there was moderate tenderness to the SI joints on the right side. (AR 920.) She was assessed with status post lumbar fusion, sacroiliitis, other intervertebral disc degeneration in the lumbar region, and bursitis. (AR 920.) Plaintiff expressed an interest in returning to physical therapy and was referred to a therapist. (AR 920.)

Plaintiff presented for a follow up appointment in March 2017, reporting a "little bit of pain on the right side," but manageable. (AR 922.) She was "hoping to return to work . . . as a home health aide." (AR 922.) On examination, Plaintiff sat in an office chair. (AR 923.) She walked with good coronal and sagittal balance, and had mild tenderness to palpation over the lower paraspinal muscles. (AR 923.) There was minimal tenderness over the SI joints, and no tenderness over the greater trochanters. (AR 923.) Plaintiff had 5/5 motor strength to manual testing, and negative straight leg raising signs. (AR 923.) X-rays showed "well-healing fusion" and she was noted to be doing "reasonably well." (AR 924.) The surgeon noted that "[a]t this time, I think it is very reasonable for her to return to work with no specific restrictions." (AR 924.)

In May 2017, Plaintiff presented for a "recheck" of her lumbar spine. (AR 925–28.) She reported completing physical therapy, which was "helpful," but that her pain has returned in her left side of the SI joint and hips as well as into the gluteal region. (AR 925.) According to Plaintiff, her pain level on average is an 8–9 at a maximum of 10. (AR 925.) On examination, she had antalgic gait, diminished sensation diffusely below the knee and foot of the left lower extremity, and decreased motor strength in the left lower extremity. (AR 926–27.) Her seated and supine straight leg raise test bilaterally was positive, and palpation to the SI joints was markedly tender on the left side. (AR 927.)

In July 2017, Plaintiff underwent a bilateral SI joint and bilateral piriformis trigger point injection. (AR 936–40.) She was assessed with SI joint dysfunction and myofascial pain. (AR

4

936.) That same month, Plaintiff complained of "tolerable" tingling and numbness in her left fingertips that seemed to increase with stress. (AR 929.) She reported being "overall 100% better and [sic] the areas injected." (AR 929.) A physical examination showed antalgic gait, diminished sensation diffusely below the knee and foot of the left lower extremity, and decreased motor strength in the left lower extremity. (AR 930–31.) Plaintiff also had a negative seated and supine straight leg raise test bilaterally, normal light touch sensation testing over the hands, fingers, and upper extremities, and nontender palpation to the lumbar spine and SI joints. (AR 930–31.) Physical therapy was recommended. (AR 931.)

### 2. Opinion Evidence

In January 2017, Kavitha Reddy, M.D., a state agency physician, reviewed the record and assessed Plaintiff's residual functional capacity (RFC).[4] (AR 121–23, 133–35.) Dr. Reddy found that Plaintiff could occasionally lift and/or carry 20 pounds and frequently 10 pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; perform unlimited pushing and pulling, subject to the lift-and-carry restrictions; occasionally climb ramps and stairs and stoop; and not climb ladders, ropes, and scaffolds. (AR 121–22, 133–34.) Upon reconsideration in April 2017, another state agency physician, J. Bonner, M.D., reviewed the record and affirmed Dr. Reddy's findings, except that they limited Plaintiff's ability to crawl to "frequently." (AR 148–50, 162–64.)

### B.   Administrative Proceedings

The Commissioner denied Plaintiff's application for benefits initially on February 6, 2017, and again on reconsideration on April 28, 2017. (AR 170–74, 182–88.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 189–90.)

On January 8, 2019, Plaintiff appeared with counsel and an interpreter, and testified before

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

an ALJ as to her alleged disabling conditions. (AR 70–80.) A vocational expert ("VE") also testified at the hearing. (AR 81–89.)

### 1. Plaintiff's Testimony

At the hearing, Plaintiff testified that she completed the eleventh grade and had a nursing assistant certificate. (AR 72.) She last worked for five months in 2018 for three hours a day, five days a week, assisting and accompanying an individual ("keep[ing] him company and talk[ing] to him"), as well as cleaning the house and preparing food. (AR 72-73, 79.) Plaintiff testified that she started at noon and "the pain was always there." (AR 79–80.) She cleaned "very little," because the individual had a nephew who helped with keeping the house clean. (AR 80.) After her three-hour shift, Plaintiff would go home and lie down. (AR 80.) Plaintiff stopped working because the individual passed away, and afterwards, Plaintiff applied again at the same company but was not called back. (AR 73.)

Plaintiff testified that she had a lot of back pain when it was cold, and stated that she could not stand unless she wore two back braces and took "a lot of medication." (AR 74–75.) "At times" she had to use a cane. (AR 76). She testified that she could not lift a gallon of milk and could not reach with her right arm. (AR 76–78.) Plaintiff has "nerves pulling" in her hands and "cramps all the time" in her right knee. (AR 78.) According to Plaintiff, she could sit for up to an hour and walk a block. (AR 78–79.)

### 2. Vocational Expert's Testimony

The VE testified that Plaintiff had past relevant work as a certified nursing assistant, Dictionary of Operational Titles ("DOT") code 355.674-014, with a medium exertional level and a specific vocational preparation (SVP)[5] of 4. (AR 82.) Plaintiff also had past relevant work as a home attendant, DOT code 354.377-014, with a medium exertional level as generally performed and an SVP of 3. (AR 82.) According to the VE, Plaintiff performed the home attendant work at the exertional level of "mostly light, probably with a sit/stand option." (AR 82)

---

[5] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

6

The ALJ asked the VE to consider a person of Plaintiff's age and education, and work experience, and that this person would be limited to lifting and carrying 20 pounds occasionally, 10 pounds frequently; sitting, standing, and/or walking six hours in an eight-hour day; frequent climbing of ramps and stairs; occasional climbing of ladders, ropes, and scaffolds; frequent balancing; occasional stooping; and frequent kneeling, crouching, and crawling. (AR 82.) The VE testified that such a person could perform Plaintiff's past relevant work as a home attendant, as performed. (AR 83.) The VE further testified that such a person could perform other, light positions under the DOT in the national economy, such as cleaner, DOT code 323.687-014 and SVP 2; a silver wrapper, DOT code 318.687-018 and SVP 1; and a marker, DOT Code 209.587-034 and SVP 2. (AR 83.)

In a second hypothetical, the VE was asked by the ALJ to consider the same person as in the first hypothetical, but that the person is further limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently; and standing and walking just two hours in an eight-hour day. (AR 83.) The VE testified that no prior work would be available, but that such a person could perform other, sedentary positions under the DOT in the national economy, such as document preparer, DOT code 249.587-018 and SVP 2; a toy stuffer, DOT code 731.685-014 and SVP 2; and an addresser, DOT Code 209.587-010 and SVP 2. (AR 83–84.) In a third hypothetical, the ALJ asked the VE to consider the person presented in the second hypothetical, but who would be off task 15% of the workday. (AR 84.) The VE responded that there would be no work such a person could perform. (AR 84.)

In a fourth hypothetical, Plaintiff's counsel asked the VE to consider the same person as in the first hypothetical, but include the additional limitation of occasional reaching in all dimensions with the right dominant extremity. (AR 84.) The VE testified that the individual could not perform Plaintiff's past work, but could perform other, light jobs in the national economy, such as usher, DOT code 344.677-014 and SVP 2; and furniture rental clerk, DOT code 295.357-018 and SVP 2. (AR 85.) In a fifth hypothetical, Plaintiff's counsel asked the VE to consider the same person as in the second hypothetical, but include the additional limitation of occasional reaching in all dimensions with the right dominant extremity. (AR 87.) The VE

7

testified that the individual could not perform Plaintiff's past work, but could perform other, sedentary jobs in the national economy, such as callout operator, DOT code 237.367-014 and SVP 2; and surveillance systems monitor, DOT code 379.367-010 and SVP of 2. (AR 87.) In a sixth, and last, hypothetical, Plaintiff's counsel asked the VE to consider the same person as in the first hypothetical, but include the additional limitations of occasional reaching in all dimensions with the right dominant extremity and a likelihood of missing three days in an average month due to pain. (AR 88.) The VE testified there was no work such a person could perform. (AR 88.)

**C.     The ALJ's Decision**

In a decision dated February 27, 2019, the ALJ found that Plaintiff was not disabled. (AR 27–38.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920. (AR 29–38.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 13, 2012, the alleged onset date (step one). (AR 29.) At step two, the ALJ found the following impairment severe: spine disorder, status post-surgery. (AR 29–31.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 31–32.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except [Plaintiff] can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; can sit for 6 hours; can stand for 6 hours; can walk for 6 hours; can push/pull as much as she can lift/carry; can frequently climb ramps and stairs; can occasionally climb ladders, ropes, or scaffolds; can frequently balance; can occasionally stoop; and can frequently kneel, crouch, and crawl.

(AR 32–36.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 33.)

The ALJ determined that Plaintiff was unable to perform her past relevant work (step 4), but was not disabled because, given her RFC, she could perform a significant number of other jobs in the local and national economies, specifically cleaner, silver wrapper, and marker (step 5). (AR 37.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on January 13, 2020. (AR 7–14.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III.   LEGAL STANDARD

#### A.   Applicable Law

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or

9

> combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing her past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may

not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends there is no substantial evidence to support the ALJ's RFC assessment. (Doc. 18 at 8–11; Doc. 22 at 2–4.) She points out that "there was substantial evidence of record in 2017 . . . comprising 171 pages of medical records[] that were not reviewed by any examining source or . . . by a proper reviewing medical source before[] a function-by-function RFC analysis was formulated." (Doc. 20 at 7. *See also* Doc. 26 at 2.) Instead, according to Plaintiff, the ALJ relied on their lay interpretation of the medical evidence. (*See* Doc. 20 at 8; Doc. 26 at 3.) Plaintiff contends that because the ALJ "fail[ed] to obtain an opinion from an examining physician source or submit the updated, post-surgery records to an 'acceptable' medical professional for interpretation," substantial evidence does not support the ALJ's RFC determination. (*See* Doc. 20 at 8; Doc. 26 at 3.) Plaintiff further asserts that the ALJ erred in discounting her subjective symptom testimony. (*See* Doc. 20 at 9–13; Doc. 26 at 4–7.)

The Commissioner responds that the ALJ's RFC assessment was based on substantial evidence and should be affirmed. (Doc. 23 at 5–8.) The Commissioner further contends that the ALJ properly evaluated Plaintiff's subjective symptom statements. (*Id*. at 8–10.)

11

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.     Plaintiff's Challenge to the Record Does Not Constitute Reversible Error**

### 1.     The ALJ Had No Duty to Develop the Record

By claiming that the ALJ erred in failing to obtain an examining physician or other medical expert to review Plaintiff's 2017 records, Plaintiff is in effect criticizing the ALJ's failure to develop the record. (*See* Doc. 20 at 8.) "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. The ALJ summarized medical evidence spanning 2011 through 2017 and found with the support of that record that Plaintiff had not established she was disabled. (AR 30, 33–36.) The record contained what appears to be Plaintiff's complete treatment records that supported the ALJ's findings and did not present an ambiguity or inadequacy. Notably, Plaintiff failed to submit any medical opinions from a treating or examining physician that support her claimed functional limitations. Because it is Plaintiff's burden to present evidence of disability, the mere absence of a report from a treating or examining physician does not give rise to a duty to develop the record; instead, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless [they] furnish[] such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 416.920(a) ("[Y]ou have to prove to us that you are . . . disabled . . . .").

Contrary to Plaintiff's assertion, an updated opinion is not required simply because additional medical evidence is received after the state agency physicians had already reviewed Plaintiff's records. *See de Hoog v. Comm'r of Soc. Sec.*, No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014). Such an occurrence is quite common. *See id.* (explaining

12

that "[i]n virtually every case further evidence is received after the state agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing.  For that very reason, the ALJ is tasked with considering the evidence in the record as a whole.").

Plaintiff cites cases in which a duty to develop the record arose (*see* Doc. 20 at 8, 9), but these were limited to situations where the subsequent "objective evidence suggest[ed] a condition that could have a material impact on the disability decision." *Molina v. Berryhill*, No. 2:17-CV-01991 CKD, 2018 WL 6421287, at *3 (E.D. Cal. Dec. 6, 2018). *See also Escudero v. Comm'r of Soc. Sec.*, No. 1:18-CV-01136-EPG, 2019 WL 4917634, at *2 (E.D. Cal. Oct. 4, 2019) (finding the ALJ improperly failed to develop the record where descriptions of some of the medical evidence post-dating the opining physicians' opinions was not "self-evident" and instead "appear[ed] to be very medical in nature and not susceptible to a lay understanding."); *Goodman v. Berryhill*, No. 2:17-CV-01228 CKD, 2019 WL 79016, at *5 (E.D. Cal. Jan. 2, 2019) (subsequent medical evidence giving rise to duty to develop the record documented "significant medical events relevant to plaintiff's physical condition.").

Here, in contrast, the evidence Plaintiff directs the Court to review does not present any "new" findings, is relatively unremarkable, is followed by improvement, and/or, to some extent, is based on subjective complaints like those discredited by the ALJ.  For example, Plaintiff cites to records from February and July 2017 showing she underwent trigger point injections for treatment of "newly diagnosed myofascial pain."  (Doc. 20 at 7 (citing AR 933–43, 936).)  Myofascial pain, however, was not a new diagnosis: Plaintiff was assessed with myofascial pain in December 2016 (*see* AR 1075), and such diagnosis was considered by the state agency physician in rendering their opinion on reconsideration (*see* AR 146, 160).  The fact that Plaintiff underwent trigger point injections in 2017 was also not novel, as such injections were recommended (yet refused) in December 2016.  (*See* AR 1075.)  Notably, Plaintiff reported being "overall 100% better" in the areas injected following treatment.  (AR 929)

Plaintiff also cites to results from physical examination in February 2017, which showed limited range of motion in Plaintiff's trunk due to stiffness, diminished sensation in her left lower

13

extremity, and moderate tenderness to the SI joints on the right side. (*See* Doc. 20 at 7 (citing AR 920).) However, as the ALJ discussed (*see* AR 33), that next month Plaintiff exhibited only mild tenderness over the SI joints, 5/5 motor strength to manual testing, and negative straight leg raising signs. (AR 923.) She was noted to be doing "reasonably well," and the surgeon stated that "[a]t this time, I think it is very reasonable for her to return to work with no specific restrictions." (AR 924.)

Plaintiff highlights her self-reported pain at 8–9 level out of 10 in May 2017 (*see* Doc. 20 at 7 (citing AR 925)), but, as the ALJ noted (*see* AR 33), subsequent, objective medical evidence shows the lumbar spine, SI joints, sciatic notches, and gluteal region were all nontender to palpation. (AR 931.) As noted previously indicated, in July 2017 Plaintiff also subsequently reported "overall 100% better" following injection treatment. (AR 929.)

Finally, Plaintiff points to a physical examination results in July 2017 showing diminished sensation below her knee and foot and decreased motor strength in her left lower extremity and hamstring (*see* Doc. 20 at 7–8), yet these same results also show otherwise normal sensation and motor strength; negative straight leg tests; and, as noted above, a lack of tenderness in the lumbar spine, SI joints, sciatic notches, and gluteal region. (AR 931.)

In sum, none of these records establish the existence of any new condition not assessed by the ALJ, or show a worsening of Plaintiff's existing conditions.[6] Plaintiff does not demonstrate otherwise. The Court therefore finds that the ALJ was not obligated to further develop the record.

### 2. The ALJ Did Not Err in Formulating Plaintiff's RFC

An RFC "is the most [one] can still do despite [their] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. § 416.945(a)(1); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."). Further, an ALJ's RFC determination need not precisely reflect any particular physician's assessment. *See, e.g., Turner v. Comm'r Soc. Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (the ALJ properly incorporated physician's observations in the RFC determination

---

[6] In fact, many of the records show improvement.

14

while, at the same time, rejecting the implication that plaintiff was unable to "perform simple, repetitive tasks in an environment without public contact or background activity").

The only expert medical opinions regarding Plaintiff's RFC at issue are those of the state agency physicians Drs. Reddy and Bonner.[7] (*See* Doc. 20 at 7; Doc. 26 at 2.) The ALJ considered the opinions of these consultants and assigned them "great weight." (AR 34.) In assessing the opinions of Drs. Bullard and Fast, the ALJ found their opinions to be consistent with the existing medical evidence, including that which post-dated their opinion, and the product of their specialization and experience in evaluating impairments and claimants in the context of determining disability. (AR 34.)

Plaintiff's primary criticism of the ALJ's RFC assessment is her claim that because the state agency physicians on whose opinions the ALJ relied did not consider subsequent records, the RFC was the result of the ALJ improperly imposing their own lay interpretation of the medical evidence. (*See* Doc. 20 at 8–9; Doc. 26 at 2–4.) This argument is unavailing.

The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a responsibility does not result in the ALJ committing legal error when they assess an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

As set forth above, the ALJ considered not only the opinions of the state agency physicians, but also evaluated the objective medical evidence post-dating their opinions, including that which Plaintiff cites in her briefing. (*See* AR 33–34, 36; Doc. 20 at 7–8.) The ALJ then interpreted that evidence, as they are charged to do, and formulated Plaintiff's RFC.[8] *See, e.g., Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked

---

[7] The ALJ assigned little weight to the opinions of Diego Allende, D.O., and Allen S. Fonseca, M.D., finding that they predated Plaintiff's alleged onset date and were inconsistent with the record, respectively. (AR 35.) Plaintiff does not challenge the ALJ's treatment of these opinions.

[8] The ALJ's RFC assessment is also based on consideration of the subjective complaint testimony, which, as set forth more fully below, the ALJ properly discredited.

15

merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."). For example, although the ALJ assigned "great weight" to Drs. Reddy's and Bonner's opinions that Plaintiff could perform unlimited balancing, kneeling, and crouching, those opinions were not dispositive and the ALJ ultimately formulated an RFC that limited those activities to "frequently." These restrictions, in addition to the others, accounted for "the combination of [Plaintiff's] impairments and symptoms, such as pain, decreased sensation, and weakness." (AR 36.)

Plaintiff does not specify what additional functional limitations in the relatively benign records she directs the Court to review establish that were not accounted for in the ALJ's RFC assessment. Nor does she otherwise show any inconsistency between this evidence and her RFC. Instead, it appears that Plaintiff is advocating for an alternative interpretation of the evidence she cites in her briefing. The Court, however, will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Molina*, 674 F.3d at 1110.

In sum, the Court does not find error in the ALJ's reliance on the opinions of the state agency physicians and further finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

### 3. Even if the ALJ Erred, Any Error is Harmless

In addition to bearing the burden of showing she is disabled, Plaintiff also has the burden of establishing that any error resulted in actual harm. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054–55 (9th Cir. 2012). An "ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *See Molina*, 674 F.3d at 1115 (quotation marks and citations omitted)); *Garcia v. Comm of Soc. Sec.*, 768 F.3d 925, 932 & n.10 (9th Cir. 2014) (harmless error analysis applies where ALJ errs by not discharging duty to develop record).

Here, even assuming the RFC was unsupported by substantial evidence because the ALJ

failed to further develop the record as to certain findings made after the state agency review, Plaintiff fails to show prejudice. *See Meanel*, 172 F.3d at 1113; *Molina*, 674 F.3d at 1115. Specifically, Plaintiff fails to explain how any of the relatively unremarkable evidence post-dating the state agency physicians' opinions, described above, would materially affect the ALJ's disability determination. In fact, according to the VE, the only restrictions that would preclude all work for Plaintiff would be (1) a limitation to being off task 15% of the workday; and (2) and a likelihood of missing three days in an average month due to pain. (AR 84, 88.) Neither of these restrictions is provided for or otherwise supported by the evidence cited by Plaintiff. Thus, any error does not warrant reversal.

**B.     The ALJ Properly Found Plaintiff Less Than Fully Credible**

   **1.     Legal Standard**

In evaluating the credibility of a claimant's testimony regarding subjective pain, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Id*. The claimant is not required to show that [their] impairment "could reasonably be expected to cause the severity of the symptom [they have] alleged; [they] need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection.[9] *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

---

[9] The Court rejects the Commissioner's contention that a lesser standard of review applies. (*See* Doc. 21 at 18 n.9.)

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which they complain. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Social Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General findings are not enough to satisfy this standard; the ALJ "'must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).

**2.    Analysis**

As noted above, the ALJ found Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms," yet rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 33.) Since the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the ALJ found that evidence in the medical record "suggests that [Plaintiff] retained functional abilities" and summarized the medical evidence. (AR 33–34.) Had that been the end of the discussion, Plaintiff's argument that the ALJ erred by "failing to provide clear and convincing reasons to reject symptomology evidence" (Doc. 20 at 9) might have merit. However, the ALJ continued the analysis, explaining that Plaintiff's "reported activities also suggest that she retained functional abilities," specifically her testimony that she "worked [three] hours a day and five days a week assisting and accompanying a person and performing duties for the person such as cleaning the house and making food." (AR 34.)

It is appropriate for an ALJ to consider a claimant's activities that undermine claims of severe limitations in making the credibility determination. *See Fair v. Bowen*, 885 F.2d 597, 603

(9th Cir. 1989); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Rollins*, 261 F.3d at 857; *see also Thomas*, 278 F.3d at 958–59 (an ALJ may support a determination that the claimant was not entirely credible by identifying inconsistencies between the claimant's complaints and the claimant's activities.). It is well-established that a claimant need not "vegetate in a dark room" to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). However, if a claimant can spend a substantial part of their day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an allegation of disability. *Fair*, 885 F.2d at 603. "Even where [Plaintiff's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Plaintiff alleges an inability to work due to pain in her back, hands, and right knee. (AR 74–78.) According to Plaintiff, she cannot lift a gallon of milk, cannot reach with her right arm, and can sit only for up to an hour. (AR 78–79.) Despite these alleged severe limitations, the record shows that Plaintiff worked three hours a day, five days a week, for five months, assisting and accompanying an individual ("keep[ing] him company and talk[ing] to him"), as well as doing some housecleaning and preparation of food. (AR 72-73, 79. *See also* AR 312–17.) Despite Plaintiff's testimony that she experienced pain while working and had to rest when she got home (*see* AR 79–80), there is no evidence in the record that Plaintiff ceased this part-time employment due to her impairments and limitations. Instead, the record reflects Plaintiff's employment ended when the person for whom she was caring passed away (AR 73). *See Lombardi v. Comm'r of Soc. Sec.*, No. 2:15-cv-0478-KJN, 2016 WL 1375565, at *4 (E.D. Cal. Apr. 7, 2016) (affirming adverse credibility finding where the plaintiff "did not fail to find or sustain work because of her impairments"). Moreover, Plaintiff then sought another position with the same employer.[10] (AR 73.) An ALJ may consider a plaintiff's continued search for employment after the alleged onset date in weighing the plaintiff's credibility. *See Bray*, 554 F.3d at 1227 (finding ALJ presented

---

[10] This is consistent with other evidence in the record demonstrating Plaintiff's willingness to resume work during the alleged disability period. (*See, e.g.*, AR 922.)

19

specific basis for discounting the plaintiff's testimony where "she recently worked as a personal caregiver for two years, and has sought out other employment since then").

On balance, the ALJ's Plaintiff's ability to work after her alleged disability onset date was reasonably considered by the ALJ to be inconsistent with her alleged inability to work due to pain and other symptoms. *See Presley-Carrillo v. Berryhill*, 692 Fed. App'x 941, 945 (9th Cir. 2017) ("the ALJ reasonably found, [the plaintiff's] typical daily activities were inconsistent with her symptom testimony—particularly given that she already worked part-time . . . ."); *Denham v. Astrue*, 494 F. App'x 813, 815 (9th Cir. 2012) (affirming a credibility finding that relied, in part, on two years of part-time janitorial work after the alleged onset date); *Archuleta v. Colvin*, No. CV 12–04486–MAN, 2013 WL 6002096, at *9 (C.D. Cal. Nov. 8, 2013) ("[P]laintiff's ability to work after the alleged onset date [gave] rise to a reasonable inference that plaintiff's subjective pain [was] not as restrictive as she allege[d] it to be."). The Court finds the ALJ did not err in evaluating Plaintiff's subjective complaints.

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **May 20, 2022**                           /s/ *Sheila K. Oberto*
                                                                  UNITED STATES MAGISTRATE JUDGE